FARMERS & MERCHANTS IRRIGATION COMPANY, APPELLANT, v. S. J. HILL, APPELLEE.

FILED FEBRUARY 29, 1912.    No. 16,959.

Waters: ACTION ON IRRIGATION CONTRACT: LIABILITY OF SUBSEQUENT GRANTEE. A purchaser of land from one who holds a water-right contract thereon with an irrigation company, and who takes title

thereto by a deed containing the ordinary covenants of warranty, with no reference to the question of water rights, and who refuses to accept water from the company, is not personally liable for the maintenance fee mentioned in the water-right contract between his grantor and the irrigation company, and an action cannot be maintained against him to recover a personal judgment therefor.

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*E. A. Cook,* for appellant.

*W. A. Stewart* and *H. M. Sinclair, contra.*

HAMER, J.

This is an appeal from the judgment of the district court for Dawson county dismissing the plaintiff's action. A trial was had to the court, and the result was a judgment for the defendant. The plaintiff filed a motion for a new trial upon the ground that the findings and judgment were not supported by sufficient evidence, that they were contrary to the evidence, and that the court erred in dismissing the action.

The plaintiff the Farmers & Merchants Irrigation Company (appellant in this court) commenced an action in the district court for Dawson county against the defendant S. J. Hill to recover a judgment for $750 and interest for a water maintenance fee for the years 1907, 1908 and 1909. The plaintiff alleged that it owned and operated an irrigation canal and furnished water to lands upon which water rights were held, and that the defendant owned section 5, in township 10 north, of range 21 west, in Dawson county, and that one of the main ditches of the plaintiff passed through said land; that there was attached to said land a water right which was evidenced by a "water-right deed" for 500 acres of said land lying under said ditch, which deed was of record at the time the defendant purchased the land; that in this water-right deed there was a provision which required the payment of 50 cents an acre

as an annual maintenance fee; that the plaintiff was engaged in furnishing water to water users under its said canal; that the land of the defendant was susceptible of irrigation; that no part of said maintenance fee had been paid, and that there was due the plaintiff from the defendant $750 and interest. The defendant answered that he was the present owner of the land, but denied all the other matters alleged.

Upon the trial the plaintiff offered in evidence the deed for the land described in the petition, together with the indorsements thereon, all of which were received without objection. There was also offered and received in evidence a "water-right deed" containing the covenants upon which plaintiff predicates its right of action. The deed for the land is one of general warranty running from the Nikaniss Company to the defendant, and contains only the ordinary and usual covenants in such a deed. The water-right deed from the plaintiff to the Nikaniss Company contains the following conditions: "That the said party of the first part (The Farmers & Merchants Irrigation Company), for and in consideration of the sum of $1,750 to it in hand paid, the receipt whereof is hereby acknowledged, and of the further annual payment hereinafter mentioned and provided for, to be made at the times named in this deed, has sold, subject to the limitations and conditions hereinafter named, and by these presents does sell and convey, unto the said party of the second part (Nikaniss Company), and to its heirs, assigns and legal representatives, the right to use water from the canal of the said party of the first part, during the irrigation season of each and every year, in an amount not exceeding the rate of one cubic foot per second of time for each 70 acres of land hereinafter described, to be used upon and for the purpose of irrigating the said land only, the same being situated in the county of Dawson, state of Nebraska, to wit: All that part of section 5, in township 10 north, of range 21 west, lying south of the main canal of the party of the first part (except that part taken up by

57

slough) containing 500 acres. The said party of the second part, its heirs, assigns and legal representatives agree to pay to the party of the first part, its successors and assigns, as a part of the consideration of this grant, annually in advance, on or before the 1st day of March in each and every year, the further sum of $250, the same being in addition to the consideration above expressed, and the amount named is hereby agreed upon as a liquidated sum as compensation to the first party for maintaining and operating said canal which it hereby promises and agrees to do, and the said party of the second part agrees to make said payments well and truly, at the times herein named, and it is hereby expressly agreed that in case the *second party* shall fail to make said payments promptly, then the first party may at its election collect said sum or sums with 8 per cent. interest thereon from and after default in payment of the same by suit in law or equity. It is further agreed that, if the first party shall elect to take judgment in a court of law for any sum or sums due on said annual payments, the same shall not be a bar to a suit in equity to foreclose the lien herein given. * * * It is further stipulated and agreed, and this conveyance is made upon the express condition, that if the said party of the second part, its heirs, assigns, shall at any time fail, neglect or refuse to make any of the annual payments hereinbefore provided for at the time the same shall become due and payable, according to the terms hereof, the said first party shall have the election, without notice, to *furnish the supply of water*, and to sue for said annual payment in law or equity, at its election, or upon such default to shut off such supply and to cease to furnish water, under the provisions of this deed, until payment is made of all such defaulted annual payments to the party of the first part, with 8 per cent. interest thereon, from the date of default, until the date of payment, and upon such payment, said second party shall be reinstated, with all the rights and privileges theretofore conferred by this deed, and it is expressly stipulated and

agreed that said second party shall not maintain any suit at law or in equity against the party of the first part, based upon the provisions of this contract, while in default of any of the annual payments hereinbefore referred to, the payment of such annual payments being a condition precedent to the performance on the part of the first party." The deed from the Nikaniss Company to Silas J. Hill is of the date April 6, 1906, and was filed for record May 10, 1906. The "water-right deed" from the Farmers & Merchants Irrigation Company to the Nikaniss Company is of the date February 13, 1904, and was filed for record February 24, 1904.

On the trial it was stipulated that the plaintiff was a corporation, and that the defendant had paid no part of the maintenance fee claimed by plaintiff in the petition; that the defendant owned the land at the time of the commencement of the action, and that he has owned it at all times since he purchased the same. It was also stipulated, for the purposes of the case, that at all times mentioned in the petition the plaintiff has been willing and able to furnish water as provided in the "water-right deed," but that the defendant at all times refused to recognize any rights or liabilities by reason of such deed, and refused to ask for water or to accept water thereunder. It was also agreed that the "water-right deed" was duly indexed against the land therein described at the time the same was filed for record.

It is the contention of the plaintiff that the "water-right deed" attached to the land and passed with the change of title, and that therefore the defendant was liable to pay the maintenance fee for each year as it matured. It is said in plaintiff's brief that, "under the rule established by this court, the water-right deed attached to the land, and cannot be severed from it: The appellee, the owner of the land, is the only person who can receive any benefit from this water right, and he in turn should be held liable to pay the annual maintenance fee." Counsel for the plaintiff contends in his brief: "The sole

question in this case is, can appellant maintain a cause of action against appellee to recover this maintenance fee, there having been no expressed assumption of the obligation in the deed conveying the land to the appellee?" The defendant contends that he cannot be held personally liable, and the district court adopted that view and dismissed the case.

The question to be determined is whether the defendant has assumed the obligations of the contract entered into between the irrigation company and the Nikaniss Company, the original owners of the land. The defendant bought the land and received a deed, which was in the ordinary form of a warranty deed, and did not mention or refer to the contract sued upon. By the purchase of the land and by receiving the deed, does the defendant assume the contract of his grantor and is he personally charged with the obligations of such grantor? It is argued that section 6825, Ann. St. 1909, obligates the ditch company to keep its canal in repair, and that therefore the duty which the legislature fixes upon the ditch company creates an obligation on its patrons to provide the funds necessary for the performance of the duty. The contract sought to be enforced is executory. The suit brought is *in personam.* It is brought against the person instead of against the thing, and is not a suit against the land to enforce an alleged lien, but it is an action against the defendant, and the theory upon which it is sought to be maintained of necessity would seem to imply the personal promise of the defendant to pay the money. The conveyance made by the Nikaniss Company to the defendant Hill may have transferred to him all the property rights which the Nikaniss Company had in the land conveyed, but if the grantee did not promise in any manner to assume the obligation of his grantor, how can he be bound? The argument of counsel for plaintiff is that "there was no reservation or suggestion of reservation in the deed from the Nikaniss Company to appellee Hill. That deed (exhibit B), it is submitted, carried with it the water

right attached to this land as an appurtenance to the land. The acceptance of the deed by appellee Hill from the Nikaniss Company was an acceptance of all the incidents attached to or belonging to the land transferred to appellee (defendant) and charged him with the conditions written therein." The defendant Hill is a stranger to the original contract made between the Farmers & Merchants Irrigation Company and the Nikaniss Company. If it may be properly said that the defendant Hill received the deed to the land from the Nikaniss Company with notice that the ditch is an easement, and with notice of all the rights of the ditch company (*Arterburn v. Beard,* 86 Neb. 733), and therefore he is charged with such notice, as is said in *Seng v. Payne,* 87 Neb. 812, it would seem that that does not in any way tend to establish the personal liability of the defendant. Counsel for the plaintiff seems to have been unable to find any case directly in point which supports his contention.

We have attempted to carefully examine each of the several irrigation acts passed by the legislature, and in not one of these acts do we find any attempt to charge the grantee of land purchased under an irrigation ditch with the obligation of his grantor to personally pay for the maintenance of the ditch. The first irrigation law passed was approved February 19, 1877, and is entitled "An act to enable corporations formed for the construction and operation of canals for irrigation and other purposes, to acquire right of way, and to declare any such canals works of internal improvement." Laws 1877, p. 168; Comp. St. 1881, ch. 16, secs. 158, 159. The next irrigation act is chapter 68, laws 1889. This was followed by chapter 40, laws 1893. In 1895 a comprehensive irrigation act was passed. Laws 1895, ch. 69. Section 46 of this particular act is the section referred to in appellant's brief as section 6825, Ann. St. 1909. In that section it is said: "It is hereby made the duty of the owner or owners of any such ditch or canal to keep the same in good repair and to cause the water to flow through the said ditch or canal to

the extent of its capacity during the period between April 15 and November 1 each year, *if the same be demanded and the supply at its source be sufficient.*" We call attention to the language of the statute to the effect that the water is only to be furnished by the ditch owner when "the supply at its source be sufficient." In *Crawford Co. v. Hathaway,* 67 Neb. 325, this court held that the act of 1877 was an implied recognition of the right to appropriate the waters of the public domain according to the custom prevailing in the arid states immediately west of us, and that the irrigation acts of 1889 and 1895 expressly recognized and prescribed the rights of those who had appropriated the public waters and applied them to agricultural uses. By section 42, ch. 69, laws 1895 (Comp. St. 1911, ch. 93*a*, art. II, secs. 42, 43), it is provided: "The water of every natural stream not heretofore appropriated, within the state of Nebraska, is hereby declared to be the property of the public, and is dedicated to the use of the people of the state, subject to appropriation as hereinbefore provided." And in the next section it is said: "The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied." These sections would seem to make the water in the natural streams of the state the property of the public; that is, the property of the state, subject however to appropriation for beneficial uses. This would seem to be specifically said by Judge SEDGWICK in *Castle Rock Irrigation Canal & Water Power Co. v. Jurisch,* 67 Neb. 377. Section 6924*x*², Ann. St. 1911, provides: "Irrigation works constructed under the laws of this state are hereby declared to be common carriers." The further provision contained in the section is: "The owner or operator of any works for the storage, carriage, or diversion of water except irrigation districts must deliver all water legally appropriated to the parties entitled to the use of the water for beneficial purposes, at a reasonable rate, to be fixed by the state railway commission, according to the law in such cases relating to common carriers."

From the statutes and decisions referred to it would seem that the waters in the running streams of the state are public property, subject to be diverted and applied for beneficial uses. That ditches may be constructed to carry the water to agricultural lands for a reasonable compensation would seem proper, and the owner of the land may undoubtedly obligate himself to assist in the construction and maintenance of the ditch. If the owner of the land after incurring an obligation of this kind sells and conveys it, is there any obligation upon the part of his grantee to keep up a maintenance fee, although he has not undertaken to do so by any personal promise?

We think that the following authorities tend to show that the defendant is not personally liable, and some of these decisions perhaps tend to show that he is not liable as grantee for any burden unless he and the plaintiff in the case are privies in estate: 17 Viner, Abridgment of Law and Equity (Privity), p. 534; 2 Bouvier, Law Dictionary; *Hurd v. Curtis*, 19 Pick. (Mass.) 459; *Educational Society v. Varney*, 54 N. H. 376; 2 Washburn, Real Property (6th ed.) secs. 1203-1205; *Cole v. Hughes*, 54 N. Y. 444; *Scott v. McMillan*, 76 N. Y. 141; *Nesbit v. Nesbit*, 1 Taylor (N. Car.) 403 (318); *Webb v. Russell*, 3 T. R. (Eng.) 393; *Keppell v. Bailey*, 2 Myl. & K. (Eng.) 517; 4 Kent, Commentaries, *473; *Mygatt v. Coe*, 124 N. Y. 212; *Pool v. Morris*, 29 Ga. 374; *Patton v. Pitts*, 80 Ala. 373; *Kettle River R. Co. v. Eastern R. Co.*, 41 Minn. 461; *Bloch v. Isham*, 28 Ind. 37; *Weld v. Nichols*, 17 Pick. (Mass.) 538; *Bally v. Wells*, 3 Wils. (Eng.) 25.

In *Fresno Canal & Irrigation Co. v. Rowell*, 22 Pac. 53 (80 Cal. 114), it was held: "Where a grantee of the covenantor had notice of the water right when he purchased the land, but did not know its terms, such knowledge was sufficient to put him upon inquiry, and a failure to do so will not relieve him of the obligation upon the land." In the same case it was held: "Under civil code, Cal., secs. 1460-1462, specifying what covenants run with the land, the covenants under the contract in question do not run

with the land, not being contained in the grant of the estate, and no personal judgment can be had against defendant; but the lien must be foreclosed against the land, he not being a *bona fide* purchaser without notice of the lien." An examination of the civil code of California shows that proceedings against the land by foreclosure of the alleged lien are dependent upon the code of that state. Civil code of California, sections 1460, 1462, 2882, 2884. It will be seen from the foregoing California case that, although the statutes of that state make the lien created by the contract follow the land, yet the court said: "There can be no judgment against the defendant personally for money, but the lien can be enforced by foreclosure against the land, and every grantee who is not a *bona fide* purchaser without notice."

Counsel for the plaintiff cites *Farmers Canal Co. v. Frank*, 72 Neb. 136. We think that case cannot properly be applied to the consideration of this one. It required in its determination the consideration of section 6782, Ann. St. 1903. It was a consideration of the statement required in an application to the state board of irrigation for a permit to appropriate water. This court held that it was necessary to state in such application a description of the land to be irrigated. The thing determined was not whether there was a personal liability for the maintenance of a ditch. It was merely directory concerning the method of appropriating water for irrigation purposes. If A purchases a tract of land upon which there is a mortgage, he does not necessarily assume payment of the mortgage, nor does he become liable in an action at law upon the original note which the mortgage secures. Of course, if he does not pay the note and thereby satisfy the mortgage, he may lose his title to the land by foreclosure. Notwithstanding the fact that he may lose the land, he does not become personally liable upon the note. This is so plain that the citation of any authority would seem to be unnecessary. In *Lexington Bank v. Salling*, 66 Neb. 180, it is held that the conveyance of land subject to out-

standing incumbrances imposes upon the purchaser no obligation to pay such incumbrances. In discussing the case the court said: "It has long been settled in this state that the acceptance of a deed which in express terms conveys land subject to an incumbrance does not impose upon the grantee a personal obligation to pay the debt. He is in such case interested in discharging the incumbrance, but he owes neither the grantor nor the incumbrancer any duty arising *ex contractu.* The transaction being nothing more than the purchase of an equity of redemption, no implied agreement is deducible from it."

We approach the determination of this case with a full realization of the importance of irrigation to the state. While the great bulk of farming in Nebraska is done upon agricultural lands which are not irrigated, yet a very considerable section must always depend upon the successful application of water to agricultural uses. This section of our state is already prosperous and is destined to support a dense population. Irrigation is to be encouraged and protected in every legitimate way.

While the plaintiff may be obliged to furnish the defendant with water for irrigation purposes, if he demands it, and the plaintiff has it, yet the refusal of the defendant to accept the water does not create a personal liability against the defendant.

It is contended by the plaintiff that the maintenance fee is by the terms of the "water-right deed" made a charge upon the land, and that the defendant by his purchase of the land became personally liable for the payment of such maintenance fee. The trouble with this contention is that neither the terms of his deed nor the several irrigation acts impose upon him any such personal liability. We are of opinion that the trial court correctly determined the question before it.

The judgment of the district court is right, and it is

AFFIRMED.