Submitted on briefs February 17, affirmed March 30, 1920.

# CRANE *v.* SCHOOL DISTRICT No. 14.

### (188 Pac. 712.)

**Pleading—Complaint Held Sufficient as Against Motions to Strike and to Make More Definite.**

1. In action against a school district to enforce payment on contract to furnish transportation to pupils under Section 4055, L. O. L., complaint, alleging that by a majority vote of the district's legal electors defendant was authorized to furnish transportation to certain pupils, pursuant to which authorization defendant contracted with plaintiff for the transportation, *held* not subject to motion to strike out or make more definite by setting forth the date of the alleged meeting of the electors, as plaintiff could not impart any knowledge in that respect which defendant did not have.

**Pleading—Motion to Strike or Make Definite Waived by Pleading Over.**

2. An objection to denial of motion to strike or to make the complaint more definite and certain is waived by pleading over.

**Schools and School Districts—Complaint Held to State Cause of Action for Breach of Contract of Employment to Transport Pupils.**

3. In action against a school district to enforce payment on contract to furnish transportation to pupils under Section 4055, L. O. L., complaint, alleging plaintiff was employed "to transport the pupils of defendant district * * for a term of nine school months beginning" on a certain date, stated a cause of action, although there was no specific averment that the employment was continuous from that date.

**Evidence—Judicial Notice That Nine Months is School Year.**

4. It is a matter of common knowledge that nine months constitute the current school year in Oregon, and that a longer or shorter period is an exception; schools generally throughout the state commencing on the second or third Monday of September and continuing for a period of nine months, known as the current school year.

**Schools and School Districts—Findings in Action on Transportation Contract Warranted by Pleadings.**

5. In action against a school district to enforce a payment on contract to furnish transportation to pupils under Section 4055, L. O. L., findings of fact that the contract was authorized by the legal voters and was executed as alleged in the complaint *held* warranted, although the complaint did not allege that such voters authorized the contract's execution for any specific length of time, for in the circumstances the current year of nine months would be a reasonable time, and must have been the period contemplated by the voters.

**Contracts—Discharged by Destruction of Subject Matter.**

6.   Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of the person or thing to which it relates, the subsequent perishing of the person or thing will excuse performance.

**Contracts—Discharged by Impossibility of Performance by Act of Law.**

7.   One of the conditions implied in a contract is that the promisor shall not be compelled to perform if performance is rendered impossible by an act of law.

**Pleading—Demurrer to Answer Its Truth.**

8.   Demurrer to an answer admits all the allegations thereof are true.

**Schools and School Districts—Power of State Board of Health to "Quarantine" Does not Include Authority to Close Public Schools.**

9.   Neither the power of "general supervision of the interests of the health and life" of citizens, nor the power to make and enforce quarantine regulations, given by Section 4687, L. O. L., to the state board of health, embraces authority to close public schools, as to prevent spread of influenza epidemic, in view of Laws of 1913, Chapter 172, Section 1, subdivision 9.

**Schools and School Districts—School Boards have Discretion to Close Schools on Account of Epidemic.**

10.   Under Laws of 1913, Chapter 172, Section 1, subdivision 9, providing that school boards shall have entire control of the public schools of their districts, the closing of the schools for any reason, as to prevent the spreading of influenza epidemic, rests in the sound discretion of the school board, and is therefore not a question of law.

**Schools and School Districts—Answer in Suit on Transportation Contract Alleging Closing of Schools Held Insufficient.**

11.   In action against a school district to enforce payment on contract to furnish transportation to pupils under Section 4055, L. O. L. answer was insufficient on which to base defense of impossibility of contract's performance by operation of law, where it specifically alleged that the school sued was closed in obedience to the order of the health officer, and not otherwise; such officer having no such power.

**Schools and School Districts—Contract to Transport Pupils not Necessarily Suspended by Closing School.**

12.   Closing of school would not necessarily suspend contract for transporting pupils during the school term, under Section 4055, L. O. L., where the contract contained no provisos or exceptions, and no order was made by anyone in any manner prohibiting the carrying out of its terms.

**Contracts—Performance of Unqualified Contract not Excused by Impossibility Due to Unforeseen Contingency.**

13.   Generally, when one voluntarily undertakes to do a thing without qualification, performance is not excused because by inevitable accident or other contingency not foreseen it becomes impossible for him to do the act or thing he agreed to do.

From Tillamook: George R. Bagley, Judge.

In Banc.

The complaint alleges that prior to August 26, 1918, by a majority vote of its legal electors the defendant was authorized to furnish transportation to all of the pupils in the district living more than two miles distant from the school building, and:

"That on or about August 26, 1918, said school district, acting through its district school board, employed plaintiff to transport the pupils of defendant district to and from the school of said district for a term of nine school months, beginning on September 16, 1918, and agreed to pay plaintiff therefor at the rate of $95 per school month, payable monthly."

It is then alleged that plaintiff accepted and entered into the performance of the contract, but that the defendant, on or about October 14, 1918, closed its school and did not reopen it until about February 10, 1919, and:

"That during the time said school was so closed the plaintiff was at all times ready, able and willing to furnish the transportation provided for in said contract, and held himself in readiness at all of said time so to do; that the closing of said school during said period was not at the request or with the consent of plaintiff, nor with any agreement that his said contract of employment should be in any way modified."

The plaintiff says that the defendant paid him $95 for the first month's services, but has failed and refused to pay him anything for the four months beginning October 14, 1918; that about February 8, 1919, he presented an itemized account, but that the claim was considered about April 24, 1919, when the defend-

ant wrongfully disallowed it.   He asks judgment for $380.

The defendant filed a motion to strike out paragraph III of the complaint, first above quoted, "for the reason that the same is irrelevant, incompetent and immaterial."   "And in case the court overrules the said motion to strike, the defendant moves that the complaint be made more definite and certain by setting forth therein the date on which was held the alleged meeting, which, it is alleged, authorized the school board of said district to furnish the transportation mentioned in paragraph II of the complaint."   Both motions were denied.   A demurrer to the complaint was then filed, "for the reason that the same does not allege facts sufficient to constitute a cause of action."   This also was overruled.   The defendant then answered, admitting:

"That on or about August 26, 1918, the plaintiff proposed to defendant and offered to transport the pupils of the defendant school district to and from school of said district during the school year of 1918 and 1919 for the sum of ninety-five ($95) dollars per month, and the defendant accepted said offer and proposal under the conditions as hereinafter stated in the further and separate answer and not otherwise."

The closing of the school from October 14, 1918, to February 10, 1919, the payment of $95 to the plaintiff for the first month's service by him, and the rejection of his claim of $380 are also admitted.

As a further and separate answer the defendant alleges that about August 26, 1918, the plaintiff proposed and offered to transport pupils "to and from the school of said district during the school year of 1918–19, for the sum of $95 per month, and the defendant accepted said offer and proposal."   It is next

averred that the contract was entered into with the understanding that the school would open about September 16th, and would continue in session, in the usual and ordinary course, for the entire school year; and that it "would not be suspended or interrupted by extraordinary casualty, operation of law, orders or directions from authorities of the state or federal government, or other causes, over which neither party had control and for which neither party was responsible." It is averred that about October 1, 1918, there was a dangerous epidemic of influenza in the school district and in Tillamook County, which continued until about February 10, 1919;

"That on or about October 8, 1918, Rupert Blue, Surgeon General of The United States Public Health Service, acting by virtue of his office, and under the authority of law made and promulgated the following order, and directed the same to the State Health Officer of all the States of the United States of America, including the State of Oregon, in words and figures as follows:

"Public Health Service will mobilize with the aid of Volunteer Medical Service Corps all outside medical aid required in combating the present influenza epidemic. The American Red Cross upon specific request from this service will mobilize nursing personnel and furnish necessary emergency hospital supplies which cannot be obtained otherwise. Inform all city and county health officers in your State that all appeals for aid must be made to the State Board of Health which will make requests of the Surgeon General of the Public Health Service whenever local needs require. Whenever necessary Public Health Service will establish and distribute on medical and nursing service.

"RUPERT BLUE,

"Surgeon-General U. S. Public Health Service.

"That shortly after said date the Acting State Health Officer of the State of Oregon, acting in obe-

dience to said order and to the order of the State Board of Health of Oregon and by virtue of his office, and by authority of the laws of Oregon, issued and directed to Dr. R. T. Boals, County Health Officer of Tillamook County, Oregon the following order, to wit:

" 'Portland, October 8, 1918.

" 'Dr. R. T. Boals, County Health Officer,

" 'Tillamook, Oregon.

" 'Dear Doctor:

" 'By order of the Surgeon General of the United States Public Health Service, you are directed in case of the appearance of an outbreak of influenza in your community to discontinue all public meetings and close all schools and places of public amusement. Report immediately any cases occurring.' "

Then follows a copy of the above order of the surgeon-general. This letter is signed by Robert E. L. Holt, Acting State Health Officer.

The answer further alleges:

"That thereafter, on or about the 14th day of October, 1918, said Dr. R. T. Boals, as such County Health Officer, and by virtue of his office and by authority of law, ordered and directed the Superintendent of Schools and the directors of school districts, including defendant, to close and discontinue the schools of Tillamook County, Oregon, including defendant's said school, to be closed and suspended until further notice, and in obedience of said orders, and authority, and not otherwise, the school of the defendant school district were closed and wholly suspended from that date until on or about the 10th day of February, 1919. That during said time plaintiff did not and could not perform any service or duty under the contract, because there was no school to be attended, and no pupils to be transported to or from such school and thereby the subject matter of the agreement between the parties for the said period of suspension ceased to exist, and this without the fault of either of the parties in this action.

"That this period of suspension is the same period for which plaintiff claims compensation, and that at the expiration thereof, by permission of the authorities hereinbefore mentioned, the defendant resumed and reopened its said school, and thereupon plaintiff resumed his duties under said agreement, and is now performing duties and services thereunder."

The plaintiff demurred to the further and separate answer, "for the reason that the same does not state facts sufficient to constitute a defense." This was sustained by the court. The defendant refused to plead further. A jury was waived, and the court made findings of fact sustaining the allegations of the complaint, particularly paragraph III above quoted. Based thereon, judgment was rendered in favor of the plaintiff for $380, and the defendant appeals, claiming that the court erred in overruling its motion to strike and the motion to make more definite and certain, in sustaining the demurrer to the further and separate answer, and in failing to permit the defendant to allege and prove the facts therein stated.    AFFIRMED.

For appellant there was a brief submitted over the name of *Messrs. Johnson & Handley.*

For respondent there was a brief prepared and submitted by *Mr. H. T. Botts* and *Mr. T. H. Goyne.*

JOHNS, J.—This action is founded on a contract alleged to have been executed under Section 4055, L. O. L., which provides:

"That a district school board of any legally organized district shall, when authorized by a majority vote of the legal voters present at any legally called school meeting, furnish transportation to and from school to

all pupils living more than two miles from the school building.''

1, 2. There is no merit in the motion to strike out or make more definite paragraph II of the complaint. The defendant is the school district with which the alleged contract is made, and officially represents its legal voters. From necessity it would have full and complete knowledge of the holding of any meeting for that purpose, and the time when it was held. The plaintiff could not impart any knowledge which the defendant did not have and such objection was waived by pleading over.

3, 4. We also think that the complaint states a cause of action. It alleges that plaintiff was employed ''to transport the pupils of defendant district to and from the school of said district for a term of nine school months beginning on the sixteenth day of September, 1918.'' While there is no specific averment that the employment is continuous from that date, it is a matter of common knowledge that nine months constitute the current school year in this state and that a longer or shorter period is an exception. As a general rule, schools throughout the state commence on the second or third Monday of September and continue for a period of nine months, known as the current school year.

5. The case was tried without a jury, and the court made findings of fact that the contract was authorized by the legal voters, and was executed as alleged in the complaint. Although it is not alleged that the legal voters authorized its execution for any specific length of time, yet in the circumstances the current year of nine months would be a reasonable time, and must have been the period contemplated by the legal voters of the district.

6, 7. The defendant vigorously contends that its further and separate answer constitutes a good defense, upon the theory that:

"Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of the person or thing to which it relates, the subsequent perishing of the person or thing will excuse performance.

"One of the conditions implied in a contract is that the promisor shall not be compelled to perform if performance is rendered impossible by an act of law."

These legal principles are sustained by the authorities cited, and are the law.

The complaint is founded upon an express, unqualified contract. The defendant contends that through the order of the county health officer its public school was closed by operation of law, and that by reason thereof the contract was *ipso facto* suspended for a period of four months. Whatever may have been his power, there is nothing in the order of the surgeon-general of October 8, 1918, authorizing or directing that all public meetings should be discontinued, or that schools or places of public entertainment should be closed. Nothing is said about closing schools. There is no reference to them whatever.

8. The demurrer admits that all of the allegations of the further and separate answer are true; hence, we must assume that there was an epidemic of influenza in Tillamook County between October 1, 1918, and February 10, 1919; that Robert E. L. Holt, acting state health officer, issued to R. T. Boals, county health officer of Tillamook County, the following order:

"By order of the surgeon-general of the United States Public Health Service, you are directed in case of the appearance of an outbreak of influenza in your community to discontinue all public meetings and close

all schools and places of public amusement. Report immediately any cases occurring.''

We must conclude that the school was closed and remained closed pursuant to that order.

Section 4686, L. O. L. provides for a ''state board of health,'' to consist of seven members, and its powers must be found in the statute. Section 4687, which defines its duties, says:

''The state board of health shall have general supervision of the interests of the health and life of citizens of this state,'' and ''it shall make and is hereby empowered to enforce such quarantine regulations as seem best for the preservation of the public health.''

It is made the duty of officers of the state ''to enforce such regulations.'' Section 4696 declares that:

''The board of health of each county shall be subordinate to the state board of health. * * It shall be the duty of the county boards of health to enforce all rules and regulations of the state board of health in their respective counties, which may be issued from time to time for the preservation of the public health and for the prevention of endemic, epidemic and contagious diseases.''

9. It will thus be seen that it is the duty of the county board of health to ''enforce all rules and regulations of the state board of health.'' The power to make and enforce quarantine regulations given the state board by Section 4687 does not embrace or carry with it the authority to close public schools. 7 Words and Phrases, page 5880, says:

''To 'quarantine' persons means to keep them, when suspected of having contracted or been exposed to an infectious disease, out of the community, or to confine them to a given place therein, and to prevent intercourse between them and the people generally of such community.''

In operation it is confined to specific persons who have or who may have been exposed to a contagious disease, and it does not apply to the public in general. Although the state board is given "general supervision of the interests of the health and life of the citizens of the state," that provision should not be construed to mean that it alone has power to close the public schools of the state. Such authority would be very broad and far-reaching and would have to be read into the statute by construction. If it had been the intent of the legislature to confer such a vast power upon the state board of health, it should have used language far more specific and certain than that appearing in the sections quoted. In every school district in the state there are three or more directors, of more or less prominence, elected by the people, who are in close and active touch with conditions in their respective district, and who have general charge and supervision of the schools.

10. Subdivision 9 of Section 1, Chapter 172, Laws of 1913, provides that "boards shall have entire control of the public schools of their districts and the teachers employed therein." Subdivision 12 says that school boards may "on account of the prevalence of any contagious disease or to prevent the spread of any such contagious disease, prohibit the attendance of any teacher or scholar upon any school under their control." But this last does not empower school boards to close schools, and such authority, if any, must be found in subdivision 9. But that portion of the act does not say that in case of an epidemic of a contagious disease the school board shall close the school, nor does it point out or define as a matter of law when or for what specific reasons the board shall close the schools. Under its general powers of control and supervision,

the closing of the schools for any reason rests in the sound discretion of the school board, and therefore it is not a question of law.   The legislature has rightfully assumed that in all such matters the school boards will work in harmony with the boards of health to prevent, suppress, control and regulate the existence and spread of contagious diseases.

11–13. It will be noted that in the instant case the defendant specifically alleges that the school was closed in obedience to the order of the health officer, and not otherwise, and hence it must follow that defendant's school was not closed by operation of law.   Neither is it a sequence that the closing of the school would suspend the contract between plaintiff and defendant, which by its terms was confined only to the transporting of pupils to and from school.   The contract does not contain any provisos or exceptions, and no order was made by anyone which would in any manner prohibit the carrying out of its terms.   As stated in 3 Elliott on Contracts, Section 1891:

"The general doctrine that, when a party voluntarily undertakes to do a thing without qualification, performance is not excused because by inevitable accident or other contingency not foreseen it becomes impossible for him to do the act or thing he agreed to do, is well settled.   As a man consents to bind himself so shall he be bound.   Where no express or implied provision as to the event of impossibility can be found in the terms · or circumstances of the agreement, it is a general rule of construction, founded on the absolute and unqualified term of the promise, that the promisor remains responsible for damages, notwithstanding the supervening impossibility or hardship."

The judgment is affirmed.          AFFIRMED.