[No. 24398. Department Two. August 15, 1933.]

THE MODEL WATER & LIGHT COMPANY, *Appellant*, v. JAMES G. DICKSON *et al.*, *Respondents.*[1]

*Edw. Peirce (Chas. J. Webb,* of counsel), for appellant.

*W. B. Mitchell,* for respondents.

TOLMAN, J.—The appellant, as plaintiff, by this action sought to recover a personal judgment against certain land owners for its annual water maintenance assessments charged against their land.

A trial on the merits resulted in findings of fact and conclusions of law unfavorable to the plaintiff.

[1]Reported in 24 P. (2d) 422.

A judgment followed dismissing its action, and from that judgment this appeal is prosecuted.

The controlling facts are undisputed, and so far as necessary to a decision may be briefly summarized as follows: Appellant is a mutual service corporation supplying water to a district under contract with the land owners of the territory which it serves. The contract entered into with the appellant by the predecessors in interest of the respondents, among other things, provides that the appellant shall produce and furnish water for the irrigation of the lands in question to a certain specified amount or proportionately with other lands of the district,

" . . . and the said owners, their heirs and assigns shall take for the aforesaid 137 acres of land its proportionate share of the water and light current so provided and pay the Water Company therefor their said lands' pro rata share of the Water Company's annual cost and expense of providing and furnishing such water . . . , as aforesaid; and the Water Company shall have and retain a first lien or mortgage upon each tract and acre of the said 137 acres of land for its proportion of the said cost and expense until the same shall have been paid, and may enforce said lien in any court of competent jurisdiction."

The contract further provides for annual assessments covering the cost of the service against each tract or parcel of land in the district, and that such assessments

" . . . when so made shall be and remain a first lien or mortgage on the lands so charged until paid; the said assessments shall be due from the owners of said lands to the Water Company from the date of their levy, as aforesaid, and, unless paid, shall be and become delinquent on the first day of the following November and draw interest at the rate of 10% per annum from said date until paid; the Water Company shall have the right to apply to any court of competent

jurisdiction and foreclose the said lien or mortgage against any of said lands charged with such delinquent assessment and all persons having or claiming any interest therein, and have such land sold and the proceeds thereof applied to the payment of such delinquent assessment, interest and the cost of such proceeding, including a reasonable attorney fee for such foreclosure, all by the same process and in the same manner as mortgages of real estate may be foreclosed under the laws of the State of Washington.''

And, finally, the contract provides:

''This contract, and each and every of the agreements, conditions and provisions thereof shall be, and be held and construed as covenants real running with the aforesaid 137 acres of land and giving to each part and parcel thereof of said lands and to the successive owners of said lands, respectively, an interest in the waters of said well and a perpetual right to have the said plants operated and the said water . . . furnished for use upon said lands, upon payment of the annual costs thereof, as above provided, and full compliance with all other terms, provisions and conditions of this agreement and the rules, regulations and by-laws of the said Water Company, and creating an easement in the said lands in favor of the Water Company, entitling it, its officers and agents to go upon any portion of said lands, at any and all reasonable times, to inspect, repair or extend any part of the said water . . . plants, systems, lines or connections, or to attend the operation thereof, and as such, this contract and all of the agreements, conditions and provisions thereof shall forever bind the respective parties hereto and their successors and assigns, and the said lands and the successive owners and purchasers thereof, their heirs, representatives and assigns.''

This contract was executed with all of the formality of a deed, and was duly filed for record before respondents became the owners of the land here involved.

A number of conveyances of this particular parcel

of land followed the execution and recording of the contract, which finally vested title in the respondents. Some of the conveyances were by quitclaim deed or by special warranty deed making no reference to the water contract. One deed recited: "subject to existing water rights, also water rent for the year 1927 amounting to $1,200, which second party assumes as a part of the purchase price." The deed by which respondents took title recites: "subject to the 1927 water irrigation lien now against said property." Respondents, after acquiring title, paid the 1927 assessment referred to in the deed which conveyed title to them, but paid no more assessments, did not crop the land, and took and used no water, nor did they record their deed.

Appellant was prepared at all times to furnish water according to the terms of the contract, and regular assessments were duly made each year following the year 1927 for the water allotted to this tract of land but not used, and this action is based upon those assessments for the years 1928 to 1931, inclusive.

There is nothing in the contract in the nature of a promise or covenant to pay annual charges for the water service, save as already quoted, and it is not suggested or contended that respondents ever entered into any covenant or promise to personally pay such charges.

In an able and exhaustive brief and by oral argument, appellant stresses the thought that the personal covenant to pay annual charges contained in the contract is a covenant running with the land, and becomes the personal covenant of subsequent grantees of the title. To support this contention there are cited the following: *Farmers' High Line Canal & Reservoir Co. v. New Hampshire Real Estate Co.*, 40 Colo. 467, 92 Pac. 290; *Fitch v. Johnson*, 104 Ill., 111; *At-*

lanta, K. & N. Ry. Co. v. McKinney, 124 Ga. 929, 53 S. E. 701, 110 Am. St. 215, 6 L. R. A. (N. S.) 436; Norfleet Adm'r v. Cromwell, 70 N. C. 634, 16 Am. St. 787, and Raymond v. Armstrong, 118 Wash. 272, 203 Pac. 50. In some of these, the land was conveyed charged with the burden to do something for the benefit of other land then owned by the grantor, a very different situation from that here presented, and one which calls for the application of a principle with which we are not here concerned. Some of these cases decide only questions with reference to the duty of the water company to furnish water under such a contract, and all of these cases can be distinguished on the facts from the case at bar.

Under the heading "Privity of Estate Required," Washburn in his well-known work on real property says:

"With a very few exceptions, the uniform current of authorities, from the time of Webb v. Russell, to the present day, requires a privity of estate to give one man a right to sue another upon a covenant where there is no privity of contract between them; and consequently that where one who makes a covenant with another in respect to land neither parts with nor receives any title or interest in the land, at the same time with and as a part of making the covenant, it is at best a mere personal one, which neither binds his assignee, nor enures to the benefit of the assignee of the covenantee, so as to enable the latter to maintain an action in his own name for a breach thereof." 2 Washburn on Real Property, (6th ed.) 258, § 1203.

The law applicable, as we see it, is still more clearly and concisely stated in 15 R. C. L., § 30, p. 476, where it is said:

"A purchaser of land from one who holds a water right contract thereon with an irrigation company, and who takes title thereto by a deed containing the ordinary covenants of warranty, with no reference to

the question of water rights, and who refuses to accept water from the company, is not personally liable for the maintenance fee mentioned in the water right contract between his grantor and the irrigation company; although, if the owner of land agrees to take water for a definite period for the purpose of irrigating such land, and to pay therefor a specified price annually, and the agreement declares that it shall run with and bind the land, a lien is created on such land which may be enforced against it in the hands of any subsequent purchaser with notice thereof."

See, also, *Farmers & Merchants Irrigation Co. v. Hill*, 90 Neb. 847, 134 N. W. 929, 39 L. R. A. (N. S.) 798, Ann. Cas. 1913B, 524, with the editorial note which discusses the authorities at length.

A most enlightening and exhaustive discussion of the whole subject matter is contained in the case of *Lingle Water Users' Association v. Occidental Building & Loan Association*, 43 Wyo. 41, 297 Pac. 385. That case differed from this in that the contract provided in plain and unmistakable words that the land owner's covenant to pay should be deemed a covenant running with the land,

" . . . and the successors in interest of the purchaser, whether he becomes such by purchase and covenant, or by operation of law, shall be bound for the fulfillment of the covenants of the purchaser herein contained, as fully as if this contract had been entered into by him in the first instance."

The Wyoming court proceeds to discuss the general policy of the law to the effect that no one should be held chargeable with an obligation under a contract except by his consent, and that generally an express consent. And it exhaustively treats of the different angles of the law relating to covenants running with the land, and expressly holds that, under a contract similar to the one we have here, but in addition pro-

viding that successors shall be bound, still the successor, there a mortgagee, was held to be not personally liable. The case is enlightening, its reasoning appeals to us, but it is so exhaustive as to forbid our quoting its language.

The contract here involved, as already indicated, does not provide that the successors in interest of the original land owners shall be personally bound to pay. Respondents did not covenant to assume and pay. They took subject to a contract which provided that the assessments should be a lien on the land of the same nature and character as a mortgage, and since they did not assume the lien or the mortgage, they, in law, occupy the same position as any other grantee who takes land subject to a mortgage. *Chaffee v. Hawkins,* 89 Wash. 130, 154 Pac. 143, 157 Pac. 35; *Fruitland Irrigation Co. v. Thayer,* 93 Wash. 338, 160 Pac. 1048.

The judgment of the trial court was right, and it is affirmed.

BEALS, C. J., MAIN, STEINERT, and MITCHELL, JJ., concur.

### ON REHEARING.

[*En Banc.* January 29, 1934.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the Departmental opinion heretofore filed herein.