Argued at Pendleton October 26; affirmed December 14, 1943

# CABELL ET AL. *v.* FEDERAL LAND BANK OF SPOKANE ET AL.

## (144 P. (2d) 297)

Before BAILEY, Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*A. S. Cooley,* of Pendleton (W. J. Warner, of Hermiston, on the brief) for appellant.

*W. C. Perry,* of Pendleton (Randall & Perry, of Pendleton, on the brief) for respondent Gordon Smith.

No appearance for respondents State Highway Commission and Federal Land Bank of Spokane.

HAY, J. On March 12, 1908, one Chas. H. Gardiner, being the owner of the SW¼ of section 34, T. 4 N., R.

28 E. W. M., entered into a contract in writing with the Hinkle Ditch Company, whereby he purchased the perpetual right to the use of eighty-one miners' inches of water, measured under six-inch pressure, for irrigation purposes. The contract, in so far as its provisions are pertinent to the present discussion, reads as follows:

"KNOW ALL MEN BY THESE PRESENTS, That the HINKLE DITCH CO., a corporation * * *, first party, in consideration of *$810* to it paid by *Chas. H. Gardiner of Hermiston, Oregon* second party, receipt whereof is hereby acknowledged, has sold, and does hereby grant, bargain, sell and convey unto the second party, his heirs and assigns, the following water right, to-wit:

"The perpetual right to use *81* miners' inches of water from the Hinkle Ditch, * * * delivered at the headgate in said ditch at the nearest and most practical point for delivery into the lateral ditch of second party and to be used upon the following land, to-wit:

"*SW¼ Sec. 34, Tp. 4, N. R. 28 E. W. M., this water right being for eighty-one acres of said land*

"TO HAVE AND TO HOLD the same unto second party, his heirs and assigns, forever, subject to the following, to-wit:

"First party shall maintain its main ditch and second party shall pay an annual maintenance fee of $1.50 per acre for each acre of said land suitable for irrigation, payable June 1st of each year to the party of the first part.

"The water may be delivered to said land under the rotation system and a delivery under a system of rotation with other water users taking water from said ditch shall be deemed a full compliance with this agreement.

* * * *

"The amount of water herein specified is estimated and agreed to be sufficient to irrigate said

land and the surplus, if any, shall belong to first party.

"This water right is appurtenant to and transferable only with *said* land and all the covenants herein shall run with and perpetually bind said land and a lien thereon is hereby created to secure the deferred payments and maintenance fees herein mentioned. \* \* \*''

This contract is upon a form prepared by or for the Hinkle Ditch Company. Those parts which are italicized above are handwritten; the rest is printed. The instrument was signed, sealed and acknowledged, and. was recorded on August 11, 1909, in the deed records for Umatilla County, Oregon. The Ditch Company later assigned the contract to Western Land & Irrigation Company, a corporation, which, in 1926, assigned it to Westland Irrigation District.

Following the execution of the contract, the Ditch Company extended its ditch or canal to and beyond a point from which it was able to deliver water to the land in question, and ever since then the Ditch Company and its successors in interest have maintained such ditch, and have been ready, willing and able to furnish water to said land for irrigation purposes, as required by the contract. Chas. H. Gardiner and his successors, as owners of the land, paid the maintenance charges up to and including those for the year 1928. In that year, the Federal Land Bank of Spokane, which was then owner of the land, entered into an executory contract to sell it to W. P. Smith and E. P. Smith, who thereupon went into possession. From that time on, the Smiths refused to pay any of the maintenance charges which accrued against the land, and, in no uncertain terms, notified the irrigation district that none of the land was suitable for irrigation, that they had

used none of the water, would use none of it, and would pay no maintenance charges whatsoever.

The complaint herein was filed by the State Highway Commission of Oregon, which desired to acquire a part of the 160-acre tract for right of way for a state highway. It alleged that suit for condemnation of such right of way had been instituted, but that the Commission had thereafter reached an agreement with the owners of the land for the purchase of the entire tract for the sum of $4,000. The Federal Land Bank of Spokane, as holder of the legal title, was made a defendant, as were W. P. Smith and E. P. Smith, the occupants of the land under their contract of purchase. Westland Irrigation District and Western Irrigation Company were made defendants, on the ground that each of them claimed a lien on the land, and Umatilla County was made a defendant by virtue of a claim for unpaid taxes. The complaint asked that the defendants be required to interplead their respective claims and interests in the premises, and prayed that the court should make a decree determining such interests. The agreed purchase price was paid into the treasury of the court. Subsequently, by stipulation of the parties, arrangements were made whereby the Federal Land Bank of Spokane received from the fund in court the amount of the unpaid balance of the sale price of the land under its contract with the Smiths. Numerous pleadings were filed by the various parties, but, when the case was ready for hearing, it had been whittled down to a contest between the defendant irrigation district and Gordon Smith, who, during the pendency of the suit, had acquired the interests of W. P. Smith and E. P. Smith and had been substituted as a party in their stead.

So far as the issues between those parties are concerned, the defendant irrigation district, in an affirma-

tive answer to the complaint, pleaded the contract which had been made between the Hinkle Ditch Company and Chas. H. Gardiner, and alleged that the Ditch Company and its successors in interest, including the district, had performed such contract; that eighty-one acres of the land covered by the contract is suitable for irrigation; that, by use of the water supplied under the contract, a portion of the irrigable land has been made into a duck pond, and that the defendants Smith leased such pond to duck hunters and have received a large income therefrom; that, during each of the years from and including 1928 to and including 1942, the district maintained its main ditch and caused water to flow therein for use upon said land, and had delivered such water to the headgate in said ditch at the nearest and most practical point for delivery into the lateral ditch supplying the land, and that, by reason thereof, there became due under the contract, on the first day of June, 1929, maintenance charges amounting to $121.50, and a like sum on the first day of June in each year thereafter, to and including the year 1942. It is alleged that, under the contract, it had a lien upon the land to secure those sums, and prayed that such lien be foreclosed.

For a first affirmative reply to such affirmative answer, the defendants W. P. Smith and E. P. Smith pleaded the six-year statute of limitations as against all of the maintenance charges accrued prior to the year 1937. For a second affirmative reply, they alleged that, since the year 1926, no portion of said land has been suitable for irrigation; that, during said period, no water for irrigation of said land or of any part thereof has been furnished by the district, or used, and, by the terms of the contract, that no liability for

annual maintenance charges has been incurred. For the third affirmative reply, they alleged that Chas. H. Gardiner was one of their predecessors in interest, but that there was no privity of estate between Westland Irrigation District and him; that the covenants of the contract, referred to in the answer, were purely personal covenants on the part of Gardiner, and did not run with the land; that the replying defendants are under no liability upon such covenants, and that there is no lien upon said land by virtue of the contract. For a fourth affirmative reply, they alleged that, at the time the contract was entered into, no investigation or survey had been made to ascertain what portion of said land was suitable for irrigation; that Gardiner and his successors in interest, for some years, tried to irrigate the land, but that "the condition of said land as a result of irrigation of surrounding lands completely changed so that a portion of said lands became submerged in water and entirely unsuitable for irrigation and by reason of the change in conditions the said contract is not and cannot be binding upon the said lands or in anywise binding upon the replying defendants", and that, by reason of such changed conditions, they should be relieved of any and all obligations under the contract.

The irrigation district demurred to the Smiths' plea of the statute of limitations, on the ground that it was not a sufficient reply. This demurrer was overruled, and the district thereupon made general denial of the new matter set forth in the amended answer of the defendants Smith.

After a hearing upon the issues thus made up, the court made a memorandum opinion, in which it determined the controversy in favor of the defendant Gordon

Smith. It held that the description of the land, upon which a lien for unpaid maintenance charges was sought to be impressed, was too general to be the foundation of a lien. It held further that the weight of the evidence was to the effect that none of the land was suitable for irrigation. The court made findings of fact which included, *inter alia*, findings that, by reason of seepage from the ditch, the land under irrigation at the time of the execution of the contract became flooded so as to be no longer fit or suitable for irrigation, and that it is now under water as the result of such seepage; that the defendants Smith have attempted to irrigate portions of such land, but have been unable to do so, and that, for many years, no water has been conveyed to the land, and no portion thereof is now suitable for irrigation; that, as early as the year 1930, Gordon Smith notified the manager of the Ditch Company that the Smiths would not and could not irrigate any of the land, would not pay for any irrigation water, and did not want any water under the contract, and that thereafter he notified the Company repeatedly to the same effect; that there is no testimony in the record as to the cost or feasibility of leveling that portion of the land which, because of rough topography, is unsuitable for irrigation, and no testimony by which the court could determine whether or not it is practicable or possible to place such rough portions under irrigation. As conclusions of law, the court found that, from the description in the contract, or from the record, it is impossible to determine what portion of the 160-acre tract was included in the eighty-one acres described as being "suitable for irrigation"; that it was the intention of the parties, in executing the contract, that no charge for water or lien for water should be placed upon any of the land save such portions as were "suitable for ir-

rigation", and that there is no testimony in the record and nothing in the contract to enable the court to identify such portions; that the description of the eighty-one acres "suitable for irrigation", as contained in the contract, is too indefinite to sustain a lien by contract, or an equitable lien, upon any portion of the 160-acre tract; that the district has no lien upon the 160-acre tract, or upon any portion of the fund in court; and that there is no proof that any of the tract has ever benefited from the use of any water for irrigation through the irrigation district's ditch. The court decreed, *inter alia*, that the irrigation district has no lien by contract and no equitable lien upon any portion of the 160-acre tract, and that it has no lien upon any portion of the fund in court, and directed the clerk to pay such fund to the defendant Gordon Smith. The irrigation district appealed.

■■ The district's demurrer to the plea of the six-year statute of limitations should have been sustained. The suit is upon a sealed instrument, and no personal judgment is sought. The appropriate period of limitation is ten years. Sections 1-203 (2) and 9-103, O. C. L. A.; *Anderson v. Baxter,* 4 Or. 105; *Myer v. Beal,* 5 Or. 130. However, since the court decided that the district was not entitled to enforce a lien against the land, if such decision was correct, no reversible error resulted from its refusal to sustain the demurrer.

■ Counsel for appellant have favored us with an excellent argument respecting the rule for construction of ambiguous instruments, but, as we read the contract, the only ambiguity therein is with reference to the description of the eighty-one acres for which the water right was sold. It conveyed a perpetual right to use eighty-one miners' inches of water from the Hinkle

20

Ditch, to be used upon a quarter section of land, "this water right being for eighty-one acres of said land". We are not prepared to say that this description, under all circumstances, would not be sufficient in a conveyance of a right to the use of water for irrigation purposes. We take judicial notice of the fact that, for many years past, the State Water Board and the State Engineer have used similar descriptions in orders of determination of relative rights to the use of waters for irrigation, and such descriptions have been adopted in decrees by the circuit courts of this state, affirming or modifying such orders of determination. While it is true that, in Oregon, water for irrigation is appurtenant to the land upon which it is used, no doubt it would be impractical, in orders of determination and in decrees, or in water right certificates, to give a description of each irrigated tract by metes and bounds, as that would involve a tremendous amount of intricate surveying. Usually, however, the general description is supplemented by maps or plats, which delineate roughly the irrigable areas. In any event, as between the parties, the ambiguity or uncertainty in the description of the land intended to be irrigated under the contract was not a very serious matter, insofar as the sale of the water right was concerned. The Ditch Company complied with its contract when it delivered the water at the required headgate. What particular eighty-one acres, within the quarter section, the landowner might irrigate, did not concern it. *Candler v. Washoe Lake Reservoir, etc. Co.*, 28 Nev. 151, 80 P. 751, 6 Ann. Cas. 946. Moreover, the contract was entered into prior to enactment of the water code of 1909 (Laws of 1909, ch. 216, sec. 65), and in those days water used for irrigation could be applied to a different use, the place of use could be changed, a sale of the whole or of a part of the

water could be made either in connection with or apart from the land, and the purchaser might use it for a different and distinct purpose. *Nevada Ditch Co. v. Bennett,* 30 Or. 59, 94, 45 P. 472, 60 Am. St. Rep. 777; *Wimer v. Simmons,* 27 Or. 1, 10, 39 P. 6, 50 Am. St. Rep. 685.

When we consider that provision which imposes an annual maintenance fee of $1.50 per acre "for each acre of said land suitable for irrigation", however, the ambiguity in the description of the land becomes important. The land was sought to be subjected to a lien to secure payment of maintenance fees, and it is the contention of the appellant that we must construe the contract as creating such lien upon the whole quarter section. We find nothing in the contract to justify such construction. The parties carefully stipulated that the water right sold was for eighty-one acres "of said land". Counsel argues that the word "of" in the quoted phrase is a word of exclusion; that it excludes the right to irrigate any more of the land described than eighty-one acres "of" it, but that the landowner might irrigate any eighty-one acres "of" it that he chose, whether in one tract or not; and (somewhat inconsistently) that, if the eighty-one miners' inches was sufficient to irrigate the whole 160 acres, then he might irrigate all of it. He contends that the proper antecedent of the words "said land" is "SW¼ Sec. 34, Tp. 4, N. R. 28 E. W. M.," and that, whenever the words "said land" appear in the contract thereafter, they refer to the same antecedent, unless the context requires a different construction.

■ The clause under which the lien is claimed to have been created reads: "This water right is appurtenant to and transferable only with said land and all the

covenants herein shall run with and perpetually bind said land and a lien thereon is hereby created to secure the * * * maintenance fees herein mentioned." This clause is not handwritten, but is a part of the printed matter appearing in the body of the contract. It was not, apparently, (as was the description of the land) adopted expressly for this particular contract. The construction insisted upon by counsel would have the effect, as we think, of rendering meaningless the proviso limiting the water to use upon only eighty-one acres. Restating the description of the land upon which the water was to be used in a simpler and less awkward form than is found in the contract itself, we paraphrase it thus: "The perpetual right to use 81 miners' inches of water from the Hinkle Ditch * * * to be used * * * upon 81 acres of the SW¼ of section 34, T. 4 N., R. 28 E. W. M." This, in our opinion, expresses the intention of the parties to limit the use of the water to eighty-one acres of land, and bases the maintenance charges upon such eighty-one acres. The trial judge held that the description of the eighty-one acres was insufficient for lien purposes, and we think that he was correct in so holding.

██ We are of the opinion that the covenants of the contract do not run with the land. *Lingle Water Users' Assn. v. Occidental Bldg. & L. Assn.*, 43 Wyo. 41, 297 P. 385; *Stanislaus Water Co. v. Bachman*, 152 Cal. 716, 93 P. 858, 15 L. R. A. (N. S.) 359. Moreover, there is no personal responsibility upon the vendee of land subject to such a contract. *Model Water & Light Co. v. Dickson*, 174 Wash. 164, 24 P. (2d) 422; *Farmers and Merchants Irrigation Co. v. Hill*, 90 Neb. 847, 134 N. W. 929, Ann. Cas. 1913B, 524, 39 L. R. A. (N. S.) 798. There can be no question, however, but that, if the land upon which such a lien is impressed is sufficiently described,

the lien may be enforced against the land in the hands of a vendee who acquired it with notice of the contract. *Guild v. Wallis,* 130 Or. 148, 279 P. 546; *Fresno Canal & Irr. Co. v. Dunbar,* 80 Cal. 530, 22 P. 275; *Fresno Canal Co. v. Rowell,* 80 Cal. 114, 22 P. 53, 13 Am. St. Rep. 112; 67 C. J., Waters, section 1089; *Trustees of Columbia College v. Lynch,* 70 N. Y. 440, 26 Am. Rep. 615; *Whitney v. Union Railway Co.,* 11 Gray (77 Mass.) 359, 71 Am. Dec. 715; *Parker v. Nightingale,* 6 Allen (88 Mass.) 341, 83 Am. Dec. 632; *Houston v. Zahm,* 44 Or. 610, 76 P. 641, 65 L. R. A. 799; *Fruitland Irr. Co. v. Thayer,* 93 Wash. 338, 160 P. 1048.

██ The principal basis for the trial court's decision was that none of the land is suitable for irrigation. In this regard, we are persuaded that the decision is supported by the weight of the evidence. We adopt, as an adequate definition of the phrase, "suitable for irrigation", as definition of "irrigable land" which is found in the case of *Babcock v. Canadian Pac. R. Co.,* 9 Alta. L. 270, (27 Dom. L. R. 432, 436, 33 West L. R. 941), as approved by this court in *State ex rel. v. McClain,* 136 Or. 53, 57, 298 P. 211, as follows:

> " 'Irrigable lands' means lands which by reason of their level, relative to the irrigation works, can have water carried over them therefrom by gravity and which, having regard to the character of the soil and of the climate, will be rendered more productive by means of irrigation properly applied in the growing of crops adapted to the locality."

██ In the nature of things, a contract of the kind under consideration is intended to operate in perpetuity, but it would be inequitable, under the circumstances, to deny relief to a landowner whose land, without his fault, is no longer suitable for irrigation.

"Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of the person or thing, condition or state of things, to which it relates, the subsequent perishing of the person or thing, or cessation of existence of the condition, will excuse the performance, a condition to such effect being implied, in spite of the fact that the promise may have been unqualified. * * *" 17 C. J. S., Contracts, section 464.

See *Strong v. Moore,* 105 Or. 12, 207 P. 179, 23 A. L. R. 1217; *Crane v. School District,* 95 Or. 644, 188 P. 712. As we understand the position of the Smiths, and the admissions of their pleadings in this regard, the land, or at least a part of it, was suitable for irrigation prior to the year 1926, and its unsuitability thereafter was brought about by conditions over which the landowners had no control, which conditions included excessive seepage from the irrigation company's ditch. Water which seeped from the ditch has developed a duck pond on a portion of the premises, and the fact that the Smiths have derived some revenue through the leasing of the duck pond for hunting purposes is used as an argument by the irrigation district in support of its contention that it has furnished the Smiths with water for use upon the land, and that such water has been put to a beneficial use. This is a fanciful argument, without any foundation in law. The district can claim no rights based upon its waste of water. If the land is no longer suitable for irrigation, and, if it has not been suitable for irrigation since the year 1926, as the trial court found, it is not subject to any lien for maintenance charges under the contract.

The decree of the lower court is affirmed, without costs to either party.