BARRINGER v. VIRGINIA TRUST CO.

(Filed April 21, 1903.)

1. EASEMENTS—*Merger—Estates.*

Where the owner of a part of the servient estate becomes the owner
of an easement thereon, there was a merger only to the extent
of his interest.

2. EASEMENTS—*Assignments—Covenants—Damages.*

The assignor of an easement to maintain a canal across certain land
is not liable for failure to maintain a dam which the original own-
er had agreed to do as a consideration of the grant of the ease-
ment.

3. EASEMENTS—*Covenants—Estoppel—Res Judicata.*

An action by the assignor of the owner of an easement, who held
the easement on the condition that he would keep up a dam,
for the purpose of restraining a servient landowner from using
more water than he was entitled to, does not establish the lia-
bility of the assignor of party owning the easement to keep up
the dam.

ACTION by Mary A. E. Barringer against the Virginia
Trust Company, heard by Judge *W. S. O'B. Robinson,* at
November Term, 1902, of the Superior Court of CHATHAM
County. From a judgment of non-suit, the plaintiff ap-
pealed.

*H. A. London* and *F. H. Busbée & Son,* for the plaintiff.

*Womack & Hayes* and *Manning & Foushee,* for the de-
fendant.

CLARK, C. J. In 1851, the Cape Fear & Deep River
Navigation Company, being desirous of digging a canal
through the lands of Alston Jones, a riparian owner, made
a contract with him under seal by which the company agreed
"to erect, maintain, keep and preserve in good order a perma-
nent and substantial dam across Deep River, upon the site
of said Jones' present mill dam, and the new dam shall be
erected, maintained, kept and preserved so as to effectually

feed and supply hereafter the said Jones' mill canal, and so as not to injure said Jones or his heirs and assigns in the use and enjoyment of the mills already erected or those hereafter to be erected, and so as to give said Jones and his heirs and assigns now and hereafter the exclusive use and enjoyment of such quantity of water as may suffice to propel a sawmill with Hotchkiss wheels and a thresher and cotton gin, and four pair of wheat stones and two pair of corn stones, and bolting works, screen and smut machines, whether that quantity of water shall be used on machinery now or hereafter to be erected by said Jones or assigns.    *    *    *    The meaning and intent of this agreement being to observe and secure to said Jones or his heirs or assigns that amount of water power from the new canal which would be requisite for propelling at all times the machinery aforesaid, and leave it discretionary with him or them to use it or apply it as they see fit to machinery now in use or hereafter to be discovered."

In accordance with this contract, the navigation company dug the canal, constructed the dam and furnished the stipulated water power to Jones. After his death, his property and rights were sold and conveyed to Clegg and Bryan, who in 1863 conveyed to Silas Burns by deed in fee "one acre near the said mill" and "water power to the amount of 15 horse power, the water power granted upon the same conditions as agreed upon between the Cape Fear & Deep River Navigation Company and Alston Jones." In April, 1894, the plaintiff's testator became the owner of whatever rights had passed to Silas Burns under the above conveyance.

After their said conveyances to Burns, Clegg and Bryan conveyed all the remainder of the Jones property and rights to other parties, and by successive deeds the defendant became the owner of the same, as it has also acquired all the property, rights and franchises of the navigation company aforesaid,   the defendant has all   the property and rights

of both parties to the contract of 1851, save only such as are outstanding in the plaintiff. There has therefore been a merger, but to that extent only. Jones on Easements, Sec. 835; Gould on Waters, Sec. 313; *McAllister v. Devane*, 76 N. C., 57.

The defendant and those under whom it claims furnished to the plaintiff's testator the fifteen horse power claimed by him till May, 1901, when the dam across the Deep River (referred to in the aforesaid contract) was broken, since which time no water whatever has been furnished, and this action is for the damages sustained thereby.

In an action determined by judgment in 1880, wherein the defendant's assignor was plaintiff and the assignors of the plaintiff's testator were defendants, the complaint alleged that the Burns heirs (assignors of the plaintiff's testator) were using more than fifteen horse power, and the jury found that they were not. The plaintiff herein relies upon the demurrer filed in that cause and other pleadings as an estoppel.

The foundation of the plaintiff's action is that the contract of 1851 created, as to the navigation company, a covenant real running with the land, and that the defendant having broken the contract and the plaintiff having acquired Jones' title, can recover for the breach of covenant. But Jones conveyed no land to the navigation company, and there can be no breach of the covenant running with the land unless there is a grant of an estate in the land to which the covenant is annexed. Jones granted an easement to dig and use a canal through his land in consideration of the other party maintaining a dam and allowing him the use of a certain quantity of the water. It was Jones' covenant which ran with his land and in favor of, not against, the navigation company. This easement has passed to the defendant, but not the obligation to keep up the dam. When the dam is not

kept up for a sufficient space of time to establish an abandonment of the easement, it is lost. But that question is not before us. It is clear that there is no obligation upon the defendant to keep up the dam. It did not bind itself to do so, and is not the assignee of any land which was conveyed originally charged with such duty. If this were an action by the defendant seeking to enforce its right to an easement, then the defense of abandonment, and perhaps a counterclaim for damages during non-user, would be properly before us.

The action determined in 1880 was by the defendant's assignor to prohibit the plaintiff's assignor using more than its fifteen horse power. It could not be established in that action brought to regulate and restrict the quantity of water which the present defendant's assignor should pay for its easement, that defendant's assignor was liable for a covenant to keep up the dam. It was not within the scope of that action. *Tyler v. Capehart,* 125 N. C., 64, in which the doctrine of estoppel is fully discussed and determined.

The defendant herein contends further that the one acre conveyed to the plaintiff's original assignor (Burns), though a part of the Jones land, does not embrace any of the land upon which the canal is located (the boundary being the embankment of the canal), but lies between the canal and the river; hence that the grant is void, being of an easement in gross, severed from the land to which it was appurtenant. But we need not consider this contention, for the reason that the defendant herein is not controverting the easement, which is in its favor, nor what payment for its use it must make to the plaintiff, if it were using the same; but the plaintiff is endeavoring to establish the defendant's liability for not performing the duty of keeping up the dam, which the defendant must do before it can claim an easement. The defendant has never contracted to keep up the dam. That was an obligation of the defunct navigation company. The de-

fendant has simply acquired the easement, which it can not use unless it complies with the terms upon which it is held. This easement may be abandoned by non-user or released by deed.    *Merriman v. Russell,* 55 N. C., 470.

In granting judgment of non-suit there was

No Error.