**JACKSON HOLE RACQUET CLUB RESORT, Appellant (Defendant/Third–Party Plaintiff),**

**v.**

**TETON PINES LIMITED PARTNERSHIP, a Wyoming Limited Partnership, Appellee (Plaintiff),**

**v.**

**TETON PINES DEVELOPMENT COMPANY, a Wyoming Corporation, Appellee (Third–Party Defendant).**

**No. 91149.**

Supreme Court of Wyoming.

Oct. 13, 1992.

Joseph F. Moore, Jackson, Gregory C. Dyekman of Dray, Madison & Thomson, P.C., Cheyenne, for appellant.

William P. Schwartz of Ranck & Schwartz, Jackson, for appellees.

* Chief Justice at time of oral argument.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

GOLDEN, Justice.

This case involves some rather complex and high level business dealings that affect two of the largest resorts in Jackson Hole. Appellant, Jackson Hole Racquet Club Resort, claims an exclusive right to perform certain property management functions for the two resort areas. Appellees, Teton Pines Limited Partnership and Teton Pines Development Company, counter that appellant has no such exclusive right. The district court found that a 1984 agreement which purported to grant appellant the exclusivity right at issue was not binding on the appellees and granted summary judgment for them.

We reverse.

Appellant raises these issues:

I. The district court erred in granting summary judgment to plaintiff when issues of material fact existed.

II. The district court erred in failing to find a binding contractual relationship between the parties.

III. The district court erred in failing to consider the importance of the notice that plaintiff had of the restrictions which are the subject of this dispute and in failing to recognize the existence of an equitable servitude.

IV. The district court's findings and conclusions were clearly erroneous in several respects.

Appellees respond with a markedly different perception of the issues:

I. Whether the district court properly construed the exclusivity provision at issue to relate unambiguously to the Aspens Subdivision and not to the separate and independent development of Teton Pines.

II. Whether the district court properly concluded that appellee is not a party to the 1984 lease containing the exclusivity provision and is not bound by its terms.

III. Whether the district court properly concluded that the exclusivity provision does not fulfill the requirements necessary for a covenant to run with the land.

The facts are complex, and this problem is compounded by appellees' muddying of the waters. The controversy concerns the two largest resort developments in Teton County, located four miles south of Teton Village on Wyoming Highway 390. "The Aspens" is a resort, development of which began in the 1960's and 1970's. "Teton Pines" is immediately adjacent to "The Aspens," but initial development of it did not commence until the mid–1980's. We now describe a series of "business deals" which ultimately led to the issues now posed before this court:

1. On August 25, 1980, Arthur E. Brown, Jr. (Brown) caused to be created a Wyoming corporation known as "The Jackson Hole Racquet Club Resort [appellant]." The purpose of this corporation was to serve as property manager for the improvements (homes, condominiums, etc.) located at "The Aspens." Brown was an officer, director and principal shareholder of this corporation.

2. On April 29, 1983, Brown caused to be created a Wyoming corporation known as "Lake Creek, Inc." He and his wife were the officers and directors of this corporation, and it served as the entity which owned, and was substantially responsible for, the further development of "The Aspens."

3. On February 21, 1984, the Teton County Commissioners conditionally approved Brown's application for a development permit. This permit is identified in the Teton County records as "Aspens II" and included the tract of land upon which "Teton Pines" is now located. Although Brown and his associates did not possess this latter tract of land at the time the permit was issued, they did have an option to purchase it.

4. On April 6, 1984, "Lake Creek, Inc." leased its office space in a building it owned in "The Aspens" to appellant. *Certain provisions of this lease form the core of the controversy.* On page 3 of this 19 page-long lease, this language is found:

3. *USE OF PREMISES/RESTRICTIONS.* The lessor hereby agrees that Lessee [appellant] may utilize the office for general office and administrative operations of Lessee in Lessee's property management, meeting, convention, seminar, banquet and resort business, and may utilize the conference space for meetings, conferences, conventions, banquets, seminars and other related uses.

Lessee [appellant] shall have the exclusive right to conduct property management, convention, meeting, seminar, hotel, motel, sleigh rides, and other similar operations from commercial premises located at The Aspens, including the Aspens as expanded from time to time on adjacent property presently owned by Skip Wright–Clark and Blake and Lee Vandewater (which is subject to an option in favor of Arthur E. Brown, Jr. or his affiliates), except as follows:

A. If the Aspens commercial area is expanded to such adjacent property, and Lessee determines that an expansion of Lessee's property management operations is desirable, then the parties will cooperate in good faith on the leasing of premises for a new, larger, first-class property management operation in the expansion area on terms which shall, unless otherwise agreed by the parties, be substantially the same per square foot rental (adjusted as appropriate for higher construction costs or financing costs, assuming 100% financing over 25 years at the conventional mortgage rates for construction of the new facilities) and other terms as this agreement, and this lease shall be revised to reflect the new location and the new terms.

B. If Lessee terminates this lease as to the conference facility (unless a new lease for a conference facility is being entered into concurrently therewith, for The Aspens or the Aspens as expanded), then this section shall no longer apply to meeting, seminar and

convention facilities at the existing or expanded Aspens commercial area.

C.  If Lessee ceases to provide property management services for all or any material portion of The Aspens or the expanded Aspens due to reasons other than force majeure, for a reasonable period of time (but not less than 60 days) after written notice of such failure including a specific request of Lessor that such services be provided, then the exclusive rights of Lessee with respect to these specific services shall cease.

D.  This section shall not apply to a property maintenance operation undertaken by or on behalf of homeowners associations and not utilizing independent managers.

Neither the Lessee nor any of its principals, agents, servants, contract vendees, sublessees, concessionaires, employees, nor any other party whatsoever acting with the consent of Lessee, shall engage on the subject property, either directly or indirectly, in the brokerage or sale of real estate at The Aspens Subdivision, Teton County, Wyoming, (as expanded) during the terms of this lease, other than brokerage of rentals and real estate seminars and similar activities at the convention center.

The initial term of this lease ran from the date of signing until September 30, 1993, and could be renewed for two additional five year periods (or through September 30, 2003).  The final paragraph of the lease, paragraph 32, provides: "The parties agree to execute a memorandum of this agreement which will be recorded with the Clerk of Teton County, Wyoming, for the purpose of putting the public on notice of the existence of the terms of this agreement."

Brown signed the lease for lessor in his capacity as President of "Lake Creek, Inc." and for lessee (appellant) in his capacity as President of Jackson Hole Racquet Club Resort.  In addition to these two signatures, Brown endorsed a paragraph which appears on the signature page of the lease, entitled "Confirmation," and states: "The

provisions of paragraph 3 of said Lease Agreement are hereby accepted and agreed to by the undersigned, on behalf of himself and his affiliates."  Finally, Brown also signed another paragraph entitled "Confirmation," and which also appeared on the signature page of the lease, in his capacity as President of "Shooting Iron Development Company."  That paragraph stated: "The provisions of said Lease Agreement are hereby accepted and agreed to by the undersigned parent company of Lessor [Lake Creek, Inc.]."

As provided in the lease, and accomplished on December 20, 1984, a "Memorandum of Agreement" was recorded in the records pertaining to the real estate on which Brown had an option and onto which he intended to expand "The Aspens," said memorandum declaring that "Lake Creek, Inc." has granted to appellant:

[T]he exclusive rights to conduct the following commercial activities at the Aspens I and Aspens II commercial areas in Teton County, Wyoming:

property management, convention, meeting, seminar, hotel, motel, sleighrides and other similar operations * * *.

5.  Also on April 6, 1984, the date on which the lease was signed, Brown sold his controlling interest in appellant to Burt Myrin and Phil Warner.

6.  On April 16, 1984, Brown caused to be created yet another company, "Lake Creek Development Company," a Wyoming Corporation.  Its purpose was to take title to the property on which Brown and his associates had an option (see paragraph 3, above).  On July 27, 1984, the property under option was conveyed to "Lake Creek Development Company."  Brown was also President and a director of that corporation.

7.  Also on July 27, 1984, "Lake Creek Development Company" deeded all but 25 acres of the property acquired that day to "Jackson Hole Racquet Club Limited Partnership," yet another entity formed by Brown and this one for the purpose of developing the property just acquired.  *The 25–acre parcel retained*

*by Lake Creek Development Company in this transaction is another crucial factor in this dispute.* This 25–acre parcel was intended to become the commercial area for "Teton Pines." Lake Creek Development Company was one of the general partners in "The Jackson Hole Racquet Club Limited Partnership."

8. In July 1986, Corwin Denney (Denney) entered upon the scene. At that time Brown and his "group" were experiencing some financial difficulties and were looking for additional investors. In July 1986, Denney was given a copy of an offering memorandum concerning the property which alerted the reader to the exclusivity agreements pertaining to appellant which were recorded in the county clerk's records.

9. On September 17, 1986, a Denney-led group of investors purchased a controlling interest in "The Jackson Hole Racquet Club Limited Partnership," the entity formed by Brown to develop the property acquired from Lake Creek Development Company. We will refer to this group of investors as the "Denney Group." Also on September 17, 1986, at the insistence of the Denney Group, Brown caused "Lake Creek Development Company" to convey the 25–acre parcel it had retained to "The Jackson Hole Racquet Club Limited Partnership." Refer to paragraph number 7 above.

10. On October 14, 1986, "The Jackson Hole Racquet Club Limited Partnership" changed its name to "Teton Pines Limited Partnership." Brown continued to serve as president of that entity for a time and remains an investor in it at the time this appeal was docketed.

11. The Denney Group, with controlling interest in "Teton Pines Limited Partnership," sought to develop a resort hotel on the property and discovered that the exclusivity agreement held by appellant was a serious impediment to that development. The Denney Group had, by this time, bought out the holders of all the other exclusivity agreements which Brown had executed.

12. Thus, on September 10, 1990, appellees filed suit against appellant in order to have the exclusivity agreement declared invalid. Since June of 1989, the Denney Group has acted as general partner for "The Teton Pines Limited Partnership" through a corporation called "Teton Pines Development Company, Inc.," which was the third party defendant in the proceedings below and is an appellee here.

The facts contained in these twelve paragraphs are not disputed by the parties. In its findings of fact and conclusions of law, the district court recites essentially these same facts. However, beginning with paragraph 21 of its findings of fact, the district court strays from reciting undisputed facts to reaching conclusions and resolving factual conflicts which are very much in dispute. In some instances, appellant contends the district court is wrong in these findings and conclusions and in others it asserts the court's findings have no particular relevance. For instance, paragraph 21 of the findings of fact states:

> 21. Neither Lake Creek, Inc. nor Defendant Racquet Club Resort (the parties to the 1984 Lease) have at any time owned any interest in any of the 560 acres of the property now constituting Teton Pines.

This finding is correct so far as it goes. The acreage was, however, under option to Brown at the time the lease was executed and another Brown entity (Lake Creek Development Company) acquired title to that property shortly after the lease (as was contemplated by the lease) and most of the acreage was then deeded to "The Jackson Hole Racquet Club Limited Partnership." Our conclusion is that this finding has no real relevance to resolution of the controversy. Paragraphs 22–24 of the findings of fact state:

> 22. Neither Lake Creek Development Company, Inc., Jackson Hole Racquet Club Limited Partnership, nor Teton Pines Limited Partnership has ever entered into any written agreement with the Defendant Racquet Club Resort, granting the Defendant the exclusive right specified in the 1984 Lease in re-

gard to Teton Pines or the Teton Pines property.

23. Neither Lake Creek Development Company, Inc. nor any other Brown entity has ever assumed any of the obligations of Lake Creek, Inc., the grantor of the exclusive rights in issue.

24. The term "Aspens" in the 1984 Lease refers to the Aspens Subdivision, sometimes called "Aspens I". While Brown contemplated expanding "Aspens I" through a development known as "Aspens II" on the property adjacent to "Aspens I", such an expansion never occurred nor has any other expansion of the Aspens occurred.

We conclude that, based on the facts now known and demonstrated of record, these findings are simply incorrect. At best, they ignore the reality of what has occurred. Paragraph 25 of the findings of fact states:

25. Neither Teton Pines Limited Partnership, Jackson Hole Racquet Club Limited Partnership, nor Lake Creek Development Company, Inc. are parties to the 1984 Lease. None of those entities even existed at the time the 1984 Lease was executed. There is no contractual basis to bind Teton Pines Limited Partnership to the provisions of the 1984 Lease.

Again, based on facts extant, this finding appears to be incorrect, but more importantly, it does not appear to be relevant to resolution of the issues. The lease was executed as described in paragraph 4 above, and none of the subsequent transactions or business maneuvers purport to extinguish it. Paragraph 26 of the findings of fact states:

26. The Aspens Subdivision has never been "expanded" to include additional properties. Since Teton Pines does not constitute an "expanded Aspens" the purported management rights granted in the 1984 Lease on their face do not attach to Teton Pines.

"The Aspens" was expanded, and this finding is not only incorrect, but seems to defy the reality of the situation as presented by all parties. The district court then concludes in paragraph 27 of the findings of fact:

27. Defendant Racquet Club Resort has no valid contractual right binding upon the Plaintiff to act as Plaintiff's exclusive property and activities manager.

This is, of course, the crux of the case and this conclusion simply cannot follow from the facts as they are demonstrated in the record. The district court's findings then continue:

28. On December 20, 1984, Defendant Racquet Club Resort caused to be recorded with the Teton County Clerk an instrument entitled "Memorandum of Agreement", reciting the execution of the 1984 Lease. The Memorandum also recites that the property subject to the exclusive rights granted in the 1984 Lease is described in an exhibit to the Memorandum and that property description includes the 25–acre parcel originally purchased and retained by Lake Creek Development Company, Inc. and later deeded to Jackson Hole Racquet Club Limited Partnership, and which parcel is that parcel presently involved in the dispute between the parties.

29. Restrictions upon the use of land, being in derogation of the common law, are not favored, are to be strictly construed, will not extend by implication, and in case of doubt the restrictions will be construed in favor of the free use of the land. *Kincheloe v. Milatzo*, 678 P.2d 855 (Wyo.1984), citing *Kindler v. Anderson*, 433 P.2d 268 (Wyo.1967).

30. In order for a restrictive covenant to "run with the land" the following elements must be established:

a. The original covenant must be enforceable;

b. The parties to the original covenant must intend that the covenant run with the land;

c. The covenant must touch and concern the land; and

d. There must be privity of estate between the parties.

20 Am.Jur.2d Covenants, Conditions and Restrictions § 30 Pages 600 to 601.

31. It is generally recognized that covenants contained in a lease may run with the land when they are of such character that the benefits and the burdens pass with the land. 51C C.J.S. Landlord and Tenant § 240.

32. The Wyoming Supreme Court has held that where restrictive covenants were adopted and pertain to the first filing of a subdivision, and where language in the declaration purported to make the declaration of protective covenants applicable to all lands owned by the declarant, the covenants apply only to the first filing area. *Kincheloe v. Milatzo,* 678 P.2d 855 (Wyo.1984).

This series of findings and recitation of the law is essentially accurate. Continuing, the district court stated:

33. The recording of the Memorandum of Agreement on December 20, 1984, did not create a covenant, condition or restriction which ran with the land. It does not satisfy the four elements for a restrictive covenant set forth above in that the "exclusive rights" provision of the 1984 Lease is so indefinite concerning its scope and meaning that it is legally unenforceable; the exclusive rights provision in the 1984 Lease does not "touch and concern the land" in that it does not purport to restrict in any way the use or development of the property constituting Teton Pines and does not burden the property itself, but rather restricts the contractual freedom of the present and future owners of the property to select the property and activities manager of their choice; the purported covenantor, Lake Creek, Inc. did not convey the burdened property (i.e., the Teton Pines property) to Teton Pines Limited Partnership or its predecessor, Lake Creek Development Company, Inc.

34. There is no privity between the covenanting parties—Lake Creek, Inc. and the defendant Racquet Club Resort, with respect to the burden of property. The covenantee, Racquet Club Resort received no interest in the Teton Pines property in conjunction with the purported grant of the exclusive rights.

35. The covenant which is to burden the land, in order that something may exist to which the former may be tied, and that it may not be suspended in the air, must accompany a grant of the land itself, or of an interest therein which exists at the time of the grant. *Lingle Water User's Assn. v. Occidental Building & Loan Assn.,* 43 Wyo. 41, 297 P. 385 (1931).

36. Plaintiff has no obligation to Defendant Racquet Club Resort under the 1984 Lease.

37. The performance or breach of the obligations called for under the 1984 Lease is strictly a matter between the Defendant Racquet Club Resort, Lake Creek, Inc. and Brown.

38. A doctrine of estoppel by deed is inapplicable to the fact situation in this case. That doctrine could only be applicable to Lake Creek, Inc. in this matter if it afterwards acquired some title to the Teton Pines property after its conveyance by lease on April 6, 1984. Since Lake Creek, Inc. has never acquired such an interest in the Teton Pines property, estoppel by deed does not apply.

39. Plaintiff is entitled to a declaratory judgment as a matter of law, decreeing that the exclusive rights provision does not obligate Plaintiff or encumber Plaintiff's property.

40. Defendant's Motion for Judgment on the Pleadings and/or Summary Judgment should be denied.

IT IS ORDERED:

1. Defendant's Motion for judgment on the Pleadings and/or Summary Judgment is hereby denied.

2. Plaintiff's Motion for Summary Judgment is hereby granted.

3. The exclusive property rights provision of the April 6, 1984 Lease Agreement between Lake Creek, Inc. and Jackson Hole Racquet Club Resort, Inc. do [sic] not obligate Plaintiff or encumber Plaintiff's property.

In view of the facts which are thus far established by the record, these findings and conclusions cannot stand nor do they

justify grant of summary judgment in favor of appellees.

Although our standard of review for summary judgment cases has been repeated on countless occasions, we deem it prudent here to set out its precepts once again. We review a summary judgment in the same light as did the district court and we use the same materials, at least to the extent they appear in the record on appeal, as did the district court. Summary judgment is proper only if there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Popejoy v. Steinle*, 820 P.2d 545, 548 (Wyo.1991). An appellee defending a summary judgment has a heavy burden in this court. Summary judgment is a useful tool to cut short litigation for which there is no useful purpose, but it is not a device for deciding doubtful cases in a summary manner and passing difficult questions of law on to this court for resolution without an adequate record. *Weaver v. Blue Cross–Blue Shield*, 609 P.2d 984, 986 (Wyo.1980). If there is doubt about the meaning of a written instrument or, as in this case, a group of written instruments which may have to be read together, a genuine issue of material fact exists and summary judgment is unsuitable. *Meuse–Rhine–Ijssel Cattle Breeders of Canada Ltd. v. Y–Tex Corp.*, 590 P.2d 1306, 1311 (Wyo.1979). To a great extent there is not serious disagreement about the facts of the instant case, but clearly the parties, quite justifiably, put two widely divergent interpretations on them. If evidence is subject to conflicting interpretations or reasonable minds might differ as to its significance, summary judgment is improper. *Weaver*, 609 P.2d at 987. *See Parker v. Haller*, 751 P.2d 372, 376–77 (Wyo.1988); *Shauers v. Bd. of County Comm'rs*, 746 P.2d 444, 448–49 (Wyo.1987); *Greaser v. Williams*, 703 P.2d 327, 334 (Wyo.1985); *Hunter v. Farmers Ins. Group*, 554 P.2d 1239, 1243 (Wyo. 1976).

Determination of the intention of the parties to a contract is the prime focus of contract construction. *True Oil Co. v. Sinclair*, 771 P.2d 781, 790 (Wyo.1989).

Moreover, a court may look to the surrounding circumstances, the subject matter and the purpose of the contract to ascertain the parties' intentions. *State v. Pennzoil Co.*, 752 P.2d 975, 978 (Wyo.1988). Subsequent events or conduct of the parties cannot be used so as to vary the unambiguous terms of a contract. *Id.* However, if the meaning of a contract is ambiguous or not apparent, resort to extrinsic evidence may be necessary and summary judgment is not available. *Worland Sch. Dist. v. Bowman*, 445 P.2d 364, 366 (Wyo.1968).

We are not able to command or earnestly advise how this case should be resolved in the trial court. It best serves if we remand to the district court with the observation that, because of its complexity the parties have polarized into extreme positions, and presentation of the issues to a fact finder will likely be required. After more complete development of the facts, whether it is necessary to present the fundamental issue to a fact finder undoubtedly will become less clouded. Appellant relied upon V Restatement of the Law of Property, *Servitudes* §§ 531–537 (1944 & Supp 1991–92), in its argument before the district court and, again based upon the record extant, that law appears to be relevant (that volume is available at the Wyoming State Law Library and at the University of Wyoming College of Law Library). *See Piccolo–Lynam Drug Co. v. Omaha Nat'l Bank*, 195 Neb. 772, 241 N.W.2d 107 (1976). Appellant did pose somewhat different issues in this appeal, but that cannot operate in this instance to benefit appellees because the principal reason for reversal is the district court's error in determining that there were no genuine issues of material fact and that appellees were entitled to judgment as a matter of law. Whether the theory relied upon was that most strenuously brought forward in the district court or the theory most strenuously brought forward in this court, the result is the same. Based on the record extant there are genuine issues of material fact which preclude summary judgment.

Reversed and remanded to the district court for further proceedings consistent with this opinion.

CARDINE, Justice, dissenting.

I dissent. I would affirm the decision of the district court.